UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BAEK, an individual; BAEK 153, LLC, an Oregon Limited Liability Company; and PACIFIC COMMERCIAL GROUP, LLC, an Oregon Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN O. HALVORSON, an individual; DAN L. HALVORSON, an individual; and JERRY ANN RANDALL, individually and as trustee of the JERRY ANN RANDALL TRUST dated July 30, 2017; PCC FUND 1, LLC, a California Limited Liability Company; GRANITE BAY PARTNERS II, LLC, a Delaware Limited Liability Company; JH RE HOLDINGS, LLC, a Delaware Limited Liability Company; COMMERCIAL INCOME ADVISORS, INC., a California Corporation; and DOES 1-5<br><br>Defendants. | NO. 2:15-cv-1425 WBS DB<br><br>MEMORANDUM AND ORDER |

Presently before the court are plaintiffs' Motion for Stay Relief to Voluntarily Dismiss Non-Answering Defendants

(Docket No. 17); plaintiffs' Motion for Order to Confirm the Validity of This Court's Prior Orders and to Enforce Such Orders (Docket No. 18); and Wenete M.A. Kosmala's, the chapter 7 trustee ("Trustee") of the bankruptcy estate of defendant John O. Halvorson, Motion for Order Substituting Trustee as Real Party in Interest and Changing Venue to the United States Central District of California (Docket No. 39).

I. Factual and Procedural Background

Defendant John Halvorson ("Halvorson") and Grace Baek were married in 2005. (Trustee's Opp'n, Ex. 8 (Bankruptcy Court's Order on Unclear Cleans) (Docket No. 29) at 123.) Halvorson and Grace Baek's brother, plaintiff Richard Baek, started a company together called Pacific Commercial Group, LLC in 2007. (Id.) In December 2012, Halvorson filed for divorce against Grace Baek in California state court. (Id.) Halvorson then initiated a case in Multnomah County Circuit Court, Oregon claiming that he was owed a commission on the "Beaverton property" sale and seeking a declaratory judgment establishing his ownership interest in Baek family investment companies. (Id. at 124.) In response, the Baeks initiated three actions against Halvorson alleging that he had interfered with the sale of the Beaverton property and that he had diverted company funds to his own use. (Id.)

During the course of this litigation, Halvorson forged his wife's signature on a purported amended prenuptial agreement and testified to its purported authenticity under oath. (Id.) The Baeks' attorney, Corey Tolliver ("Tolliver"), discovered the forgery. (Id.) In February 2015 the Oregon Circuit Court found

2

Halvorson in contempt of court for this forgery and dismissed all of his claims against the Baeks. (Id.) The total amount of the Oregon state court judgment in favor of the Baeks against Halvorson was $785,972.75 (the "Oregon Judgment"). (Id. at 125.) In addition to this litigation, Richard Baek also filed a police report against Halvorson in 2013 alleging embezzlement. (Id.) After discoving the forgery in 2014, he filed a second police report. (Id.)

The Baeks made a settlement offer to Halvorson on June 25, 2014 which required, among other things, that Halvorson sell his house in Stockton, California (the "Stockton property") where his mother, defendant Jerry Ann Randall ("Randall") had been living for forty years, and pay all net proceeds to the Baeks. (Id.) Halvorson rejected the offer. (Id. at 126.)

Following the entry of the Oregon Judgment, on February 25, 2015, an Application for Entry of Judgment on Sister-State Judgment was filed in Superior Court of California, County of Orange, seeking domestication of the Oregon Judgment in California. (Id.) The enforcement of the domesticated judgment was stayed. (Id.) On April 2, 2015, Halvorson filed an ex parte application in Orange County Superior Court to further extend the stay on the ground that the Oregon Judgment was on appeal. (Id. at 126.)

At this point, in order to protect Randall's interest in the Stockton property, Halvorson and Randall signed a promissory note with Dan Halvorson, Halvorson's brother, as payee. (Id. at 127.) The promissory note was secured by a deed of trust and recorded in the San Joaquin County Recorder's office

3

on April 3, 2015.  (Id.)

The Baeks discovered this deed of trust against the Stockton property and responded by filing the present action in this court on July 2, 2015 against Halvorson, Randall, and Dan Halvorson.  (Compl. (Docket No. 1).)  On July 13, 2015, plaintiffs filed a First Amended Complaint ("FAC") naming entities related to defendant John Halvorson--PCC Fund 1, LLC; Granite Bay Partners II, LLC; JH RE Holdings, LLC; and Commercial Income Advisors, Inc.--as additional defendants ("entity defendants") and alleging intentional fraudulent transfer, constructive fraudulent transfer, fraudulent conveyance, conspiracy to commit fraudulent conveyance, and aiding and abetting fraudulent conveyance.  (FAC (Docket No. 4).)

On July 16, 2015 Halvorson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing his bankruptcy case in the Central District of California, Sana Ana Division.  (Trustee's Opp'n, Ex. 8 at 127.) Wenete Kosmala was appointed chapter 7 trustee.  (Id.)  On July 20, 2015, Halvorson filed a Notice of Bankruptcy Filing, notifying this court that he had filed a voluntary chapter 7 petition in the Bankruptcy Court for the Central District of California.  (Docket No. 6.)  On August 10, 2015, Dan Halvorson and Jerry Ann Randall filed an Answer.  (Docket No. 8.)  Neither John Halvorson nor the entity defendants ever filed an answer.

On October 2, 2015, Grace Baek and Richard Baek filed another complaint in the Bankruptcy Court against Halvorson seeking a determination that his liability to them under the Oregon Judgment was excepted from discharge, thereby commencing

4

another adversary proceeding (the "1382 Action"). (Trustee's Opp'n, Ex. 8 at 128.)

On October 9, 2015, plaintiffs and the answering defendants--Danny Halvorson and Jerry Ann Randall--entered into a stipulation to stay this case pending the resolution of John Halvorson's bankruptcy case. (Docket No. 11.) The stipulation was approved on October 13, 2015, (Docket No. 12) and the case has remained stayed since then.

On October 14, 2015, the Bankruptcy Trustee filed with the Bankruptcy Court in the Central District of California a Notice of Removal of United States Eastern District Court Action to Bankruptcy Court. (Trustee's Opp'n, Ex. 8 at 128.) This purportedly removed Eastern District of California case was re-designated as Adversary Proceeding No. 8:15-ap-1391 MW and assigned to Bankruptcy Judge Wallace (the "1391 Action"). (Id.) The causes of action were deemed to involve administration of bankruptcy estate property and proceedings to determine, avoid, or recover fraudulent conveyances. (Id.) Thus, the Trustee substituted in as real party in interest plaintiff as to all causes of action other than the cause of action for conspiracy and aiding and abetting. (Id.)

On October 21, 2015, the Bankruptcy Trustee submitted a separate Notice of Removal to the Clerk's office in the Eastern District of California. (Docket No. 13.) However, the Clerk correctly modified the docket entry for the removal filing, stating that the court would disregard the notice and instructing the Trustee to initiate a new action. (Id.) Despite this court's notice that it would "disregard" the Notice of Removal,

the purportedly "removed" case continued to be litigated in the Bankruptcy Court for over two years.

On November 2, 2015, John Halvorson received a chapter 7 discharge. (See No. 8:15-bk-13556 MW, Docket No. 58 (Discharge of Debtor).) As a result of this, all of the claims asserted against him in this case were discharged. (See Docket No. 18-1 (RJN Ex. 9)("John Halvorson is not . . . a party to the Fraudulent Transfer action . . . as a result of his chapter 7 discharge).)

On November 25, 2015, Grace Baek filed another complaint in the Bankruptcy Court against Halvorson and the Trustee, commencing Adversary Proceeding No. 8:15-ap-1454 MW (the "1454 Action") seeking a declaratory judgment as to what is and what is not property of the bankruptcy estate. (Trustee's Opp'n, Ex. 8 at 128.) This action was also assigned to Bankruptcy Judge Wallace, who was already overseeing the purportedly removed Eastern District case.

The Central District Bankruptcy Court held a status conference for the 1391 Action and the 1454 Action on March 2, 2016. (Id. at 129.) On March 4, 2016, the Bankruptcy Court ordered that both cases--the purportedly removed case and the additional adversary proceeding initiated by Grace Baek--go to mediation. (Id.) The mediation between the Baeks and Halvorson was scheduled for May 27, 2016 in front of Judge Meredith A. Jury, a United States Bankruptcy Judge for the Central District of California. (Id.)

Throughout this time, the criminal investigation against Halvorson, which had been initiated by the Baeks,

6

continued to move forward. (Id. at 130.) On May 9, 2016, Halvorson was indicted for perjury, forgery, identity theft, attempted aggravated identity theft, and attempted aggravated theft in the first degree. (Id.) The grand jury proceedings were covered by Deputy District Attorney Kevin Demer ("Demer"). (Id.)

Throughout May of 2016, Tolliver, the Baeks' attorney, had numerous discussions with Demer regarding having Halvorson arrested. (Id. at 131.) As part of these conversations, Tolliver told Demer that the Baeks had offered to pay for the cost of extradition in order to have Halvorson arrested. (Id.) During a May 23, 2016 conversation, Tolliver informed Demer that John Halvorson had been ordered to appear at a mediation at the Bankruptcy Court in Riverside, California on May 27, 2016. (Id.) On May 27, during the mediation in Judge Jury's courtroom, Demer had Halvorson arrested. (Id. at 134.) After Halvorson was arrested, the mediation ended without a settlement among any of the parties. (Id.)

At this point, Bankruptcy Judge Wallace apparently realized that the Baeks had commenced three lawsuits against Halvorson in Oregon state court, had sued Halvorson, his mother, and brother in the United States District Court for the Eastern District of California, and had initiated two additional adversary proceedings against Halvorson in the Bankruptcy Court. (Id. at 138.) On June 22, 2016, Judge Wallace held a status conference with respect to the 1391 and 1454 Actions, at which point he learned that Halvorson had been arrested during the mediation. (Id.)

The Bankruptcy Court then issued an Order After Status Conference raising the unclean hands doctrine sua sponte and staying the adversary proceedings except as to the issue of whether any party to the mediation was guilty of unclean hands by reason of taking actions that had the effect of sabotaging the mediation through Halvorson's arrest. (Id.) The Bankruptcy Court planned to hold a bifurcated trial, with the first phase addressing the issue of unclean hands. (Id.)

The Baeks moved for partial summary judgment and also moved to dismiss the unclean hands affirmative defense. (Id. at 139.) The Bankruptcy Court rejected these motions. (Id.) On July 11, 2017 the Baeks filed motions seeking the permission of the United States District Court for the Central District of California to take an interlocutory appeal of the Bankruptcy Court's orders denying the motions. (Id.) The District Court denied those motions. (Id.)

A bench trial was held in the Circuit Court of the State of Oregon between July 31, 2017 and August 4, 2017 on the criminal charges against Halvorson. (Id.) He was convicted on forgery and two counts of identity theft, and acquitted of perjury. (Id.)

On October 6, 2017, in an attempt to avoid the trial on unclean hands scheduled for later that month, the Baeks executed a settlement agreement with the Trustee providing for the Baeks' purchase and acquisition of the Trustee's rights, claims, and interests in the 1454 Action and the execution and filing of a stipulated judgment in the 1391 Action (the purportedly "removed" action). (Id.) The Trustee filed a motion to continue the

bifurcated trail on unclean hands until after the motion to approve the settlement was determined. (Id.) Judge Wallace denied the motion for continuance. (Id. at 140.)

The trial on unclean hands, overseen by Bankruptcy Judge Wallace, commenced on October 30, 2017 and ran through November 3, 2017. (Id.) Mere minutes after the trial began, the Baeks filed an Emergency Motion to Recuse Bankruptcy Judge Wallace in the Bankruptcy Court. (Id.) On November 17, 2017, the Baeks filed a Motion to Withdraw the Reference in the 1391 Action and 1454 Action (the "Reference Withdrawal Motion") in the District Court. (Id.) The Recusal Motion was heard by the Bankruptcy Judge Theodor C. Albert on January 9, 2018 and denied on January 23, 2018. (Id.) The Reference Withdrawal Motion was denied by United States District Judge James V. Selna on January 29, 2018. (Id.)

The Baeks then filed a notice of appeal to the District Court on the denial of the Recusal Motion. (Id. at 141.) Additionally, they filed in the Bankruptcy Court an emergency motion for a stay of the effectiveness of the order denying the recusal motion (the "Stay Motion") and a motion for certification of a direct appeal (the "Certification Motion") to the United States Court of Appeals for the Ninth Circuit. (Id.) Both motions were assigned to Bankruptcy Judge Albert, and he denied them both. (Id.) The Baeks filed a Petition for Writ of Mandamus with the Ninth Circuit on February 2, 2018. (Id.)

Judge Wallace entered a Memorandum Decision in the unclean hands case on February 14, 2018, in which he found the Baeks guilty of unclean hands against the Trustee, Halvorson, Dan

9

Halvorson, and Randall. (Id. at 166.) In doing so, Judge Wallace explained that his court would "shut its doors against the [Baeks], and . . . refuse to interfere on their behalf, to acknowledge their right or to award them any remedy in these adversary proceedings." (Id. at 123.)

Two weeks later, on February 28, 2018, after entry of its Memorandum of Decision, the Bankruptcy Court held a status conference during which it discussed the procedural defect in the initial removal of the 1391 Action and what impact, if any, it had on the Bankruptcy Court's jurisdiction over the Adversary Proceeding. Judge Wallace expressed "grave doubt" as to whether the 1391 Action was ever removed to his court. (Trustee's Opp'n, Ex. 9 (Order Continuing Stay of Memorandum Decision).) On April 26, 2018, the Bankruptcy Court declared that it would stay the Memorandum Decision "so that the Eastern District may hear and determine the [removal issue]." (Id.)

On June 11, 2018, this court held a hearing on plaintiffs' Motion for Stay Relief to Voluntarily Dismiss Non-Answering Defendants and plaintiffs' Motion for Order to Confirm the Validity of this Court's Prior Orders and Enforce Such Orders. Counsel and the court agreed to continue the hearing on these Motions to August 6, 2018, to be heard together with the Trustee's Motion to Substitute Trustee as Real Party in Interest and Motion to Change Venue to the United States District Court Central District of California.

II. Motion to Change Venue

Because the Trustee is not a party to this action, the Trustee has no standing to make a motion to change venue until

10

and unless the Trustee is granted leave to intervene or substitute as a party to this action.  However, the Trustee's motion is joined in by the answering defendants, who do have standing to make the motion.  Accordingly, the court considers the motion.

The answering defendants seek to transfer venue to the Central District of California.  The first question is whether the Central District of California is a judicial district where the action might have been brought within the meaning of 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

To answer that question, the court must look to facts as they existed at the time the action was brought.  See, e.g., Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985) ("In determinizing whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district."); see also Hoffman v. Blaski, 363 U.S. 335, 343 (1960) (explaining that "[i]n the normal meaning of words this language of Section 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted").

Accordingly, looking to the facts at the time this action was brought, Halvorson was a party defendant and resided in the Central District of California, and all other defendants resided within the state of California.  Therefore, plaintiffs

11

could have properly filed this action in the Central District of California. See 28 U.S.C. § 1391(b) (A civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located").

In order to determine whether the court should exercise its discretion to transfer this case to the Central District, however, the court looks to the facts as they exist now. Although this court continues to reiterate that the 1391 Action was never properly removed to the Bankruptcy Court in the Central District, it cannot deny the fact that the case and related issues have been extensively litigated there, and a trial has already purportedly been held. There is no doubt that the purported trial, although the Bankruptcy Court never had proper jurisdiction to hold that trial, dealt with the very issues currently pending before this court.

Additionally, the Bankruptcy Court, indisputably with jurisdiction, has heard and decided a number of related issues involving similar facts and parties. The 1454 Action, for example, in which Grace Baek seeks a declaratory judgment as to what is and is not property of Halvorson's bankruptcy estate, was properly before Bankruptcy Judge Wallace. Additionally, the 1382 Action, also properly before the Bankruptcy Court, was initiated by Grace and Richard Baek in an effort to obtain a determination that Halvorson's liability to them under the Oregon Judgment was exempt from discharge. Of course, Halvorson's bankruptcy case, the reason this case was originally stayed, is also properly pending in the Bankruptcy Court in the Central District.

Accordingly, the Bankruptcy Court has been, and continues to be, importantly involved in the circumstances surrounding this case, and over the last two years it has become extremely familiar with the facts of this case. It is indisputable that the Bankruptcy Court and judges within the Central District are now more familiar with the facts of this case than is this court. It would be a waste of time, energy, and money to require this court to attempt to become familiar with the complex and convoluted litigation that has occurred in this case already. Therefore, transferring the venue would conserve judicial resources and promote the interests of justice.

Pursuant to Ninth Circuit law, when considering whether to grant a motion to change venue the court should also consider the plaintiff's choice of forum and convenience to witnesses. Jones v. GNC Franchising, 211 F.3d 495, 498-99 (9th Cir. 2000). Here, the court recognizes that plaintiffs request that venue not be transferred. However, Halvorson's bankruptcy proceeding, which remains ongoing although he has been discharged, is in the Central District. Additionally, as explained above, litigation involving precisely the same claims at issue here--whether it was properly removed or not--has been, and continues to be, ongoing within that district. The court concludes that this procedural and factual background outweighs plaintiffs' desire to keep the case in the Eastern District. Thus, the court determines that the Central District of California is the more appropriate venue to handle this matter.

Although plaintiffs indicate that defendant Randall has expressed difficulty traveling to the Central District, the court

13

has not been presented with any evidence suggesting that Randall would not also express an inability to travel to Sacramento. Thus, this argument does nothing to convince the court that the Eastern District is a superior venue in which to continue this case. Therefore, the court will grant the Motion to Change Venue.

Whether to now properly refer the case to the Bankruptcy Court in the Central District of California, where the litigation purportedly and apparently continues to be ongoing, is not a decision this court can make. Only a district judge in the Central District of California has the power to refer this action to the Bankruptcy Court within that district. This order should accordingly not be construed as suggesting to any judge in the Central District that the matter must be transferred to the Bankruptcy Court, or what effect, if any, that court should give to any proceedings that have already been purportedly held in the Bankruptcy Court.

IT IS THEREFORE ORDERED that the Trustee's Motion for Changing Venue (Docket No. 39), which the answering defendants have joined, be, and the same hereby is, GRANTED. In doing so, the court deliberately avoids the question of whether the Trustee should be substituted as the real party in interest or whether the non-answering defendants should be dismissed. Once this case has been transferred, a judge in the Central District of California may answer those questions or, if that court elects to do so, may send the matter to the Bankruptcy Court within that district.

All other currently pending motions (Docket Nos. 17,

18) are MOOT.

Dated: August 10, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE